UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

| | |
|---|---|
| AMTRUST INTERNATIONAL UNDERWRITERS DESIGNATED ACTIVITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TRITON ROOFING & RESTORATION LLC,<br><br>Defendant. | 3:24-cv-00425-JAR-SJH<br><br>OPINION AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

Before the court is Plaintiff Amtrust International Underwriters Designated Activity Company's ("Amtrust") motion for summary judgment seeking a declaration that it has no duty to defend or indemnify Defendant Triton Roofing & Restoration LLC ("Triton"). See Compl. at 1–2, ¶ 7, ECF No. 1 (Apr. 30, 2024). This is a declaratory judgment action stemming from an insurance coverage dispute between Amtrust, the insurer, and Triton, the insured. See id. This dispute arises out of an underlying action ("Davis action") between Bryan Davis ("Mr. Davis")[1] and Triton. See id. The Davis action alleges that Mr. Davis sustained injuries while working on a

---

[1] The complaint also named Bryan Davis as a Defendant. Compl. at 1, ECF No. 1 (Apr. 30, 2024). Mr. Davis stipulated to be bound by any judgment entered in this action. See Joint Stipulation to Be Bound by J. at 2, ¶¶ 6–7, ECF No. 15 (June 12, 2024). Mr. Davis was thereafter voluntarily dismissed from this lawsuit. See Pl.'s Notice of Voluntary Dismissal as to Def. Bryan Davis Only, ECF No. 16 (June 13, 2024).

OPINION AND ORDER – JAR-SJH

jobsite run by Triton. See id. at 2, Ex. A at 2, ¶¶ 8–9. Amtrust seeks a declaration that no coverage is afforded under Triton's commercial general liability insurance policy for any damages alleged by Mr. Davis against Triton and that Amtrust has no duty to defend or indemnify Triton in the Davis action. Id. at 1–2, ¶ 1. For the following reasons, Plaintiff's motion for summary judgment is granted.

## BACKGROUND

Amtrust is an insurance provider that issues general liability insurance. Amtrust issued a commercial general liability ("CGL") policy (Policy No. DSI 1258315 01) to Triton as the named insured. Id. at 5, ¶ 20. The policy was in effect from February 17, 2018, to February 18, 2019. Pl.'s Mot. for Summ. Final J. at 4, ¶ 10, ECF No. 30 (Sept. 4, 2024) ("Pl.'s MSJ"). Triton's insurance policy affords coverage subject to a limit of $1,000,000. Compl. at 3, ¶ 8.

Triton performs roofing services on buildings located in Jacksonville, Florida. See id. at 4, ¶ 14. On June 4, 2018, Triton entered into a construction agreement for a property located in Jacksonville. Def.'s Resp. to Pl. Mot. for Summ. J. at 3, ¶ 7(a), ECF No. 35 (Sept. 25, 2024) ("Def.'s Resp."). Triton was hired to re-roof four structures as part of the agreement. See Compl. at 4, ¶ 14. Triton entered into a subcontract agreement with Tool Time Portable Building and Storage Sheds ("Tool Time") to provide services on the project. Def.'s Resp. at 3, ¶ 7(b).

Mr. Davis was employed to work on the re-roofing project.[2] See Compl. at 4, ¶ 15. On June 28, 2018, Mr. Davis slipped and fell approximately twelve feet to the ground while working

---

[2] The parties dispute Mr. Davis's employment status at the time of his accident. See Pl.'s Mot. for Summ. J. Reply at 5, ECF No. 37 (Sept. 27, 2024); Def.'s Resp. to Pl. Mot. for Summ. J. at 10, ECF No. 35 (Sept. 25, 2024) ("Def.'s Resp."). Amtrust argues that Mr. Davis was employed by Triton. Compl. at 4, ¶ 15. Triton argues that Mr. Davis was an employee of its subcontractor, Tool Time. Def.'s Resp. at 4 ¶ 8.

OPINION AND ORDER - 2

on the project. Id. at 4, ¶ 16. In the Davis action, Mr. Davis alleges that his fall caused him bodily injury and was a result of Triton's negligence. See id., Ex. A at 2, ¶ 9.

On May 11, 2021, Mr. Davis filed a lawsuit against Triton. Id. at 4, ¶ 17. This lawsuit is currently pending in the circuit court in Duval County, Florida. Id. Mr. Davis seeks damages against Triton resulting from Triton's alleged failure to provide a safe working environment for Mr. Davis. Id. at 4, ¶ 18. Amtrust has agreed to provide Triton with a defense in the Davis action subject to a complete reservation of rights. Id. at 5, ¶ 19. Amtrust filed this action against Triton seeking a declaration that no coverage is afforded under Triton's CGL policy for any damages alleged by Mr. Davis against Triton. See id. at 1–2, ¶ 1.

## DISCUSSION

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

The moving party bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

OPINION AND ORDER - 3

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial. United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc).

On summary judgment, "the evidence of the non-movant is to be believed." Anderson, 477 U.S. at 255. "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences . . . in [its] favor." Four Parcels, 941 F.2d at 1437 (internal quotations and citations omitted).

## II.     **The Language of the Policy and its Exclusions**

Amtrust issued Triton a CGL policy that covers bodily injury caused in the coverage territory[3] and during the policy period of Triton's work. See Compl., Ex. B at 19. A CGL policy provides coverage to the insured for bodily injury, property damage, personal injury, or advertising injury arising from the business's operations or injuries that occur on the business's premises. See id., Ex. B at 18. Exclusions apply to this coverage. See id., Ex. B at 20. The relevant exclusions relate to coverage for injuries to Triton's employees, Triton's subcontractors and independent

---

[3] The coverage territory is defined as the state listed in the insured's address on the declarations page of the insurance policy. See Compl., Ex. B at 14. Triton listed its address as "P.O. Box 600254 Jacksonville, FL 32260." Id., Ex. B at 2. The coverage territory is therefore the state of Florida. See id.

OPINION AND ORDER - 4

contractors,[4] the employees of Triton's subcontractors and independent contractors, and day laborers.[5] See Pl.'s MSJ at 4, ¶ 12, 5, ¶ 13.

There is an exclusion for injury to employees or workers. Compl., Ex. B at 34–35. This exclusion states that

> [b]odily injury . . . sustained by: (a) [a]n employee of an insured arising out of: (1) [e]mployment by an insured; or (2) [p]erforming duties related to the conduct of any insured's business; or (b) [a] subcontractor or independent contractor working directly or indirectly on any insured's behalf; or (c) [a]n employee of any subcontractor or independent contractor working directly or indirectly on behalf of any insured

is not covered under the policy. Id. The policy defines employee as "any person or persons hired by, loaned to, leased to, contracted for, or volunteering services to an insured, whether or not paid or compensated by an insured." Id., Ex. B at 61. The definition of employee includes

> all possible categories and types of employees, including but not limited to any leased worker, temporary worker, volunteer worker or anyone who may be determined to be an employee of any insured or an employee of an employee of any insured, under any legal or equitable theory or doctrine. Employee includes anyone that any insured or subcontractor of the insured may be found liable for or to as an employer.

Id. The policy exclusion is written broadly to cover any possible worker of Triton's. This includes individuals hired directly by Triton, such as employees, subcontractors, and day laborers, as well as those hired indirectly by Triton's subcontractors. This broad policy exclusion language helps

---

[4] The independent contractors exclusion states that "[a]ny claim or suit arising, in whole or in part, out of the actions or inactions of or the materials provided by an independent contractor performing work on behalf of an insured or the actions or inactions of the independent contractor's employees, laborers, suppliers or vendors" is excluded under the policy. Compl., Ex. B at 32.

[5] The day laborers exclusion states that "[b]odily injury . . . sustained by day laborers or other individuals who prior to the bodily injury . . . are not specifically identified on the Named Insured's employment records are not compensated as employees of the Named Insured through a payroll/staffing or professional employer organization ("PEO") service under contract with the Named Insured" are not covered under the policy. Compl., Ex. B at 34.

OPINION AND ORDER - 5

to further the purpose of CGL policy coverage generally which "is to provide coverage for injuries that occur to the public-at-large." Amerisure Ins. Co. v. Orange and Blue Constr., Inc., 545 F. App'x 851, 855 (11th Cir. 2013). "The logic in the exclusion [of injuries to employees] from coverage . . . is simple and compelling: the only coverage intended, and for which the premium has been paid, is the liability of the insured to the public, as distinguished from liability to the insured's employees." Florida Ins. Guar. Ass'n v. Revoredo, 698 So. 2d 890, 892 (Fla. 3d DCA 1997). Per the language of the policy, Mr. Davis is excluded from coverage. Mr. Davis falls under the broad policy exclusion language as either "an employee of any insured or an employee of an employee of any insured." See Compl., Ex. B at 61. The policy exclusion language clearly contemplates exclusion of Mr. Davis whether as a direct employee of Triton's or as an employee of Triton's subcontractor, Tool Time.

### III. Amtrust Has No Duty to Defend Under the Policy

Amtrust argues that the policy does not cover the claims alleged in the Davis action against Triton because coverage for such claims is excluded under the terms of the policy. See Compl. at 9, ¶ 28. Amtrust notes that the policy explicitly excludes coverage for injury to employees of Triton while working for Triton. See Pl.'s MSJ at 11. Amtrust further argues that because the Davis complaint alleges that Mr. Davis was employed by Triton at the time of his fall, Triton is not covered under the policy. See id. at 17–18. Thus, Amtrust argues that it has no duty to defend Triton in the Davis action. See id. at 18. Triton counters that Mr. Davis's employment status was unclear, and that discovery in the Davis action shows that Mr. Davis was not an employee of Triton, but rather an employee of Tool Time, at the time of his fall. See Def.'s Resp. at 3 ¶¶ 4–5, 4 ¶ 8, 9.

A liability insurer's duty to defend a claim made against its insured must be determined solely from the allegations in the underlying complaint. Higgins v. State Farm Fire and Cas. Co.,

894 So. 2d 5, 8 (Fla. 2004). The question of defense is "resolved strictly by reference to the allegations of the underlying complaint, not by the actual facts, the insured's version of the facts or the insurer's defenses." Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co., 165 F. Supp. 2d 1332, 1335 (S.D. Fla. 2001). The central inquiry is "whether the allegations 'fairly and potentially' bring the transaction within the coverage provisions of the policy." Id. at 1335 (citing Trizec Props., Inc. v. Biltmore Constr. Co., 767 F.2d 810, 811 (11th Cir. 1985); State Farm Fire & Cas. Co. v. Higgins, 788 So. 2d 992 (Fla. 4th DCA 2001)). "When the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 814 (Fla. 1st DCA 1985) (citing Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So. 2d 533 (Fla. 1978); Fed. Ins. Co. v. Applestein, 377 So. 2d 229 (Fla. 3d DCA 1979)).

Here, the court is limited to the allegations in the four corners of the underlying complaint in the Davis action to decide the duty to defend issue.[6] The complaint in the Davis action alleges that "[t]hroughout the re-roofing project, Triton employed various workers to complete the work. Mr. Davis was one such worker." Compl., Ex. A at 2, ¶ 4. As explained above, Triton disputes Mr. Davis's assertion that he was an employee of Triton at the time of his fall and provides support for this contention with extrinsic evidence.[7] See Def.'s Resp. at 3, ¶ 7, 4, ¶ 8. The court, however,

---

[6] Triton requests that this court take judicial notice of documents submitted in the underlying Davis action. Def.'s Resp. at 5. In deciding the duty to defend issue, the court is limited to the allegations in the Davis complaint. Due to this limitation, the court declines to take judicial notice of the documents filed in the Davis action.

[7] Triton supports its argument that Mr. Davis was not an employee of Tool Time with the affidavit of Christopher Malone, the owner and president of Triton. Def.'s Resp. at 3, ¶ 7. This affidavit was provided as part of discovery in the Davis action. See id., Ex. 6. In the affidavit, Mr. Malone states that Mr. Davis was not an employee of Triton. Id., Ex. 6 at 2, ¶ 7. He further states that Mr. Davis was only "permitted to perform services for the subcontractor, Tool Time." Id., Ex. 6 at 2, ¶ 8.

OPINION AND ORDER - 7

is limited to the allegations of the complaint in the Davis action, and the complaint in the Davis action alleges that Mr. Davis was employed by Triton. See Compl., Ex. A at 2, ¶ 4. Additionally, any inconsistency between the actual facts surrounding Mr. Davis's employment and the allegations Mr. Davis made in the Davis complaint is resolved in favor of the allegations in the Davis complaint. See Baron Oil Co., 470 So. 2d at 814 (citing Nat'l Union Fire Ins. Co., 358 So. 2d 533; Fed. Ins. Co., 377 So. 2d 229). Based solely on the allegations in the Davis complaint, and without reference to information uncovered during discovery in the Davis action, Triton is excluded from coverage under the terms of the policy. Triton is excluded from coverage because according to the Davis complaint, he was an employee of Triton and the policy terms exclude employees from coverage. See Compl., Ex. A at 2, ¶ 4; Ex. B at 34.

In the alternative, Amtrust argues that Mr. Davis's exact employment status is immaterial for the purpose of deciding coverage because the language of the policy plainly excludes coverage for anyone performing work for Triton. Pl.'s MSJ at 11. Triton argues that the allegations in the Davis complaint do not specify whether Mr. Davis was an employee, a subcontractor or independent contractor, an employee of a subcontractor or independent contractor, or a day laborer. See Def.'s Resp. at 7, 9. Thus, Triton contends, it is unclear if Mr. Davis was actually an employee of Triton's.[8] See id. Triton argues that because Mr. Davis's employment status is unclear based on the general allegations of the complaint, it is possible that Mr. Davis was not an employee of Triton's at the time of his fall. See id. Triton argues that if Mr. Davis was not an employee of

---

[8] Triton further argues that Mr. Davis's employment status is ambiguous because it is "undetermined" if Tool Time paid Mr. Davis for his work on the date of the accident. See Def.'s Resp. at 10. Tool Time admits that Mr. Davis was working for Tool Time when he was injured. Id. The language of Triton's insurance policy states that an "[e]mployee includes any person . . . hired by . . . or volunteering services to an insured, whether or not paid or compensated by an insured." See Compl., Ex. B at 61 (emphasis added). Mr. Davis falls under the policy's definition of employee regardless of whether or not he was paid by Tool Time on the date of his injury.

OPINION AND ORDER - 8

Triton's at the time of his injury, the employee policy exclusion no longer applies, and the allegations in the Davis complaint qualify for coverage under the policy. See id.

Where there is any doubt as to whether the duty to defend exists in a particular case, this question must be resolved against the insurer and in favor of the insured. See Baron Oil Co., 470 So. 2d at 814 (citing New Amsterdam Cas. Co. v. Knowles, 95 So. 2d 413 (Fla. 1957)). In laying the allegations of the complaint against the terms of the policy in determining the potential for coverage, the interpretational analysis begins with the basic legal principle in Florida that insurance contracts are to be construed in accordance with the plain language of the policies as bargained for by the parties, with any ambiguities interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. See Auto–Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000) (citing Prudential Prop. and Cas. Ins. Co. v. Swindal, 622 So. 2d 467, 470 (Fla. 1993); State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998)).

Here, the plain language of the policy excludes coverage for Triton. The employment exclusions are broad and clearly contemplate excluding from coverage all employees, subcontractors, employees of subcontractors, and day laborers. See Compl., Ex. B at 32, 34; Pl.'s MSJ at 17. Further, the policy's definition of employee covers any person "hired by, loaned to, leased to, contracted for, or volunteering services to an insured, whether or not paid or compensated by an insured." Compl., Ex. B at 61. The Davis complaint states that Mr. Davis worked on the re-roofing project "for the benefit of Triton." Id., Ex. A at 2, ¶ 5. The broad policy language clearly contemplates the exclusion of anyone working for Triton – including individuals directly "hired by" Triton and those indirectly "contracted for" by Triton. Even if the court decided to look outside the four corners of the underlying complaint to consider extrinsic evidence and

found that Mr. Davis was an employee of Tool Time rather than an employee of Triton at the time of his accident, Mr. Davis would still fall under the policy exclusion as an employee of a subcontractor of Triton's. The policy exclusion covers "an employee of any subcontractor or independent contractor working directly or indirectly on behalf of any insured." Compl., Ex. B at 34. Tool Time was a subcontractor of Triton.[9] See Def.'s Resp. at 3, ¶ 7(b). A written contract exists between Triton and Tool Time outlining the terms of their subcontract agreement. See id., ¶ 7(c). In addition, Mr. Davis's complaint alleges that he "performed work on the roofing project" "for the benefit of Triton" when he slipped and fell. See Compl., Ex. A at 2, ¶ 5. It is clear from the allegations of the Davis complaint, and from the plain language of the insurance policy, that Mr. Davis was working "on behalf" of Triton. Thus, Mr. Davis can be considered an employee of Triton at the time of his injury. Thus, the Davis action is excluded from coverage under Triton's insurance policy.

### IV. Amtrust Has No Duty to Indemnify Under the Policy

Triton argues that Amtrust's motion is premature because the duty to indemnify must be determined in the light of the actual facts in the underling lawsuit. Def.'s Resp. at 6. Triton argues that because Mr. Davis's employment status is at issue in the underlying action, facts might arise that could establish coverage under the policy. Id. at 9. Triton asks the court to stay this action

---

[9] "Under Florida law, a contractor who sublets part of its work to a subcontractor develops a statutory employment relationship with the employees of that subcontractor." Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1322 (11th Cir. 2014). The concept of a "statutory employee" derives from Florida's Workers' Compensation Law, Fla. Stat. § 440.01 et seq. See Florida Ins. Guar. Ass'n v. Revoredo, 698 So. 2d 890, 891–92 (Fla. 3d DCA 1997). Florida courts have treated "statutory employees . . . identically to actual employees in relation to standard employee exclusion clauses." Id. at 891 (citing Dodge v. Fid. & Cas. Co. of N.Y., 424 So. 2d 39 (Fla. 5th DCA 1982)). The law provides that the employees of a subcontractor are deemed to be employed "in one and the same business or establishment" as the contractor. See Fla. Stat. § 440.10(1)(b) (2004).

until the duty to indemnify issue is resolved. Id. Amtrust counters that because there is no duty to defend, the question of indemnity coverage is moot. See Pl.'s Reply at 6–8.

The duty to indemnify is narrower than the duty to defend. Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2010) (citing CTC Dev. Corp., 720 So. 2d at 1077 n.3). The duty to indemnify is determined by the underlying facts adduced at trial or developed through discovery during litigation. Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1324 (11th Cir. 2014) (citing U.S. Fire Ins. Co. v. Hayden Bonded Storage Co., 930 So. 2d 686, 691 (Fla. 5th DCA 2006)). Because "the duty to defend is much broader than the duty to indemnify . . . a court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify." Atlantic Cas. Ins. Co. v. Innovative Roofing Sys., Inc., 411 F. Supp. 3d 1287, 1291 (S.D. Fla. 2019) (citing Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009)).

As explained above, the court finds Amtrust has no duty to defend Triton under the policy. Because the court finds no duty to defend, the court finds no duty to indemnify. The court disagrees with Triton's contention that it is material that the Davis action does not "fairly establish that Davis was an 'Employee' or 'Day Laborer' of Triton." Def.'s Resp. at 9. Triton admits that it subcontracted the re-roofing project to Tool Time, and Tool Time admits that it employed Mr. Davis. Def.'s Resp. at 4, ¶ 8. The language of the policy excludes bodily injury to "[a]n employee of any subcontractor . . . working directly or indirectly on behalf of any insured." Compl., Ex. B at 34. Thus, there is not a material fact in dispute regarding Mr. Davis's employment status for purposes of coverage of the policy at issue. Based on these considerations and the allegations in the underlying Davis complaint, Amtrust has no duty to indemnify Triton under the policy.

## CONCLUSION

OPINION AND ORDER - 11

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff Amtrust's Motion for Summary Judgment, ECF No. 30, is granted.

/s/ Jane A. Restani
Jane A. Restani, Judge[*]

Dated: January 14, 2025
New York, New York

---

[*] Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

OPINION AND ORDER - 12